IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHRISTUS HEALTH, a Texas Non-Profit Corporation, | § § § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 3:25-cv-03319-X |
| | § | |
| CHRISTUS FINANCIAL CARE, LLC, | § | |
| *Defendant*. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Christus Health sued Defendant Christus Financial Care LLC for trademark infringement.[1]  Plaintiff obtained the clerk's default on liability on February 13, 2026.  (Doc. 10).  Plaintiff filed a default judgment motion against Defendant asking the Court to grant a permanent injunction and attorney's fees.  (Doc. 11).  For the reasons below, the Court **GRANTS IN PART AND DENIED IN PART** the motion for default judgment and enters judgment in favor of Plaintiff.

## I. Background

Plaintiff is an international Catholic, faith-based, not-for-profit health system comprised of more than 40 hospitals and long-term care facilities, and can be found in over 74 cities in Texas, Arkansas, Louisiana, and New Mexico.[2]  By virtue of Plaintiff's federal registrations, Plaintiff owns and has the exclusive right to use 10 Christus Marks, all of which include the "Christus" in the name.  Plaintiff uses the

---

[1] Because the parties have similar names—the reason for this lawsuit—the Court will diverge from its usual practice of using the parties' names and will use "Plaintiff" and "Defendant."

[2] Doc. 1 at 8–9.

Christus Marks in connection with all the company's goods and services. Plaintiff owns and hosts its primary website under the <https://www.christushealth.org/> domain and a similar relevant financial website of <https://www.christushealth.org/plan-care/bill-pay/financial-assistance>.

Plaintiff alleges that Defendant began using <https://christusfinance.site/> to operate financial assistance services under the mark "Christus Financial Services." Plaintiff sued Defendant for infringement of registered trademarks, violation of Section 43(a) of the Lanham Act, violation of the Federal Trademark Dilution Act, violation of Texas Anti-Dilution Statute, common law trademark infringement, and common law unfair competition[3] and served Defendant with service of process on December 22, 2025. When Defendant failed to answer, Plaintiff obtained a clerk's default and moved for default judgment. As of May 2026, Defendant continued to use the Christus domain name and marks substantially similar to the Christus marks, including "Christus Financial Services."

## II. Legal Standards

Federal Rule of Civil Procedure 55(b)(2) provides that, in proceedings not involving a certain sum:

> the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or

---

[3] Doc. 1

make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to:

(A) conduct an accounting;

(B) determine the amount of damages;

(C) establish the truth of any allegation by evidence; or

(D) investigate any other matter.

A default requires a court to accept as true a plaintiff's well-pled allegations in a complaint.[4]

In determining whether to enter a default judgment, courts conduct a two-part analysis. First, courts examine whether a default judgment is appropriate under the circumstances.[5] Relevant factors (called the *Lindsey* factors) include: (1) whether disputes of material fact exist; (2) whether there has been substantial prejudice; (3) whether grounds for default are clearly established; (4) whether the default was caused by a good faith mistake or excusable neglect; (5) the harshness of a default judgment; and (6) whether the court would be obliged to grant a motion from the defendant to set the default judgment aside.[6] Second, the Court assesses the merits of the plaintiff's claims and whether there is a sufficient basis in the pleadings.[7]

---

[4] *See, e.g.*, *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 499 (5th Cir. 2015) (a complaint is well-pled when "all elements of [a] cause of action are present by implication"); *Matter of Dierschke*, 975 F.2d 181, 185 (5th Cir. 1992) ("It is universally understood that a default operates as a deemed admission of liability.").

[5] *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

[6] *Id.*

[7] *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

### III. Application

Plaintiff has fulfilled all conditions precedent required to seek a default and final judgment in its favor. The Court has no reason to believe Defendant is incompetent or a minor for the purposes of the additional requirements in Rule 55(b)(2). So the Court considers the *Lindsey* factors and the sufficiency of Plaintiff's pleadings.

### A. Procedural Appropriateness of Default Judgment

Under the *Lindsey* factors, a default judgment is appropriate in this case. First, there are no material facts in dispute because Defendant has not filed any responsive pleading. Second, regarding substantial prejudice, Defendant's failure to respond could bring adversarial proceedings to a halt and substantially prejudice Plaintiff, but not itself. Third, Defendant's continual failure to respond or participate in this litigation clearly establishes grounds for the default. Fourth, regarding mistake or neglect, there is no reason to believe Defendant is acting under a good faith mistake or excusable neglect. Fifth, a default judgment would not be unduly harsh in these circumstances because Defendant was properly served, failed to appear, and is in default, which warrants a default judgment under Rule 55(b)(2). The sixth factor is whether the Court would grant a motion to set aside the default. The pleadings, the lack of response, and, consequentially, the failure to plead a meritorious defense indicate a lack of good cause for the Court to set aside the default

4

judgment. Thus, the Court concludes a default judgment is appropriate under these circumstances.

### B. Sufficiency of Plaintiff's Claims

Next, the Court must assess the merits of Plaintiff's claims. Although Defendant, by virtue of its default, is deemed to have admitted Plaintiff's well-pled allegations, the Court must nonetheless review the complaint to determine whether it established a viable claim for relief.[8]

To prevail on 15 U.S.C. §§ 1114, 1125(a) claims[9] a plaintiff must show "(1) it possesses a legally protectable trademark and (2) [the defendant's] use of this trademark creates a likelihood of confusion as to source, affiliation, or sponsorship."[10] Moreover, "[r]egistration of a mark with the [Patent and Trademark Office] constitutes prima facie evidence of the mark's validity and the registrant's exclusive right to use the registered mark in commerce with respect to the specified goods or services."[11]

Here, Plaintiff possesses the Christus Marks, as evidenced by the registration with the Patent and Trademark Office. And the Defendant's domain name's use of "Christus Financial" is confusingly similar to Plaintiff's Christus marks. Thus, Plaintiff satisfies the elements of successful 15 U.S.C. §§ 1114, 1125(a) claims.

---

[8] *Id.*

[9] The Court only addressed 15 U.S.C. §§ 1114, 1125(a) because these are only statutes that Plaintiff requests relief under in its motion for default judgment. *See* Doc. 11 at 8.

[10] *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 450 (5th Cir. 2017) (cleaned up).

[11] *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 237 (5th Cir. 2010)

### C. Relief

Instead of seeking monetary damages, Plaintiff seeks a permanent injunction. Plaintiff requests that the Court permanently enjoin Defendant "its agents, servants, employees, officers, associates, attorneys, and those in active concert or participation with Defendants . . . from infringing the Christus marks" and the transfer of the infringing domain names, including requesting relevant third parties to take all necessary steps to transfer the Christus Financial Services Digital domain names, to Plaintiff.

The Lanham Act grants courts the power to grant injunctions, "according to the principles of equity and upon such terms as the court may deem reasonable."[12]  A plaintiff seeking a permanent injunction must satisfy four factors:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.[13]

Here, the entry of default judgement is "tantamount to actual success on the merits and satisfies the first prong of the test—that Plaintiff has suffered an actual injury."[14]  Plaintiff has no adequate remedy if Defendant is permitted to continue using the mark.  There has been no showing that Defendant will suffer a hardship if it is forced to stop using the mark, but there is a substantial threat that Plaintiff will

---

[12] 15 U.S.C. § 1116(a).

[13] *eBay Inc. v, MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

[14] *Neutron Depot, LLC v. Bankrate, Inc.*, 2016 WL 215544, at *3 (S.D. Tex. Jan. 19, 2016) (citing *United State 'ex rel' M-Co Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987)).

continue to suffer harm without an injunction.  The injunction will not disserve the public interest.  Thus, the Court finds Plaintiff is entitled to a permanent injunction. The Court **ORDERS** that Defendant is permanently enjoined from infringing upon Plaintiff's mark.

The remaining dispute is the scope of the injunction.  An "injunction must 'state its terms specifically' and 'describe in reasonable detail' the conduct restrained."[15]  Plaintiff requests an injunction (1) enjoining Defendant (including officers, agents, servants, employees, and attorneys; and other persons who are in active concert or participation with anyone described above)[16] from infringing the CHRISTUS marks, (2) transferring the Christus Financial Domains to Plaintiff and (3) requesting third parties transfer the domain name should Defendant fail to comply.  The Court finds that Plaintiff's proposed injunction against Defendant is not overly broad.  The Court thus **GRANTS** Plaintiff's request for a permanent injunction.

### D. Exceptional Case

Finally, the Lanham Act permits a prevailing party to recover its costs of action and authorizes an award of attorney fees in an "exceptional case."[17]  While there is no rigid test for determining what "exceptional" means,[18] the Supreme Court in

---

[15] *Daniels Health Scis. L.L.C. v. Vascular Health Scis. L.L.C.*, 710 F.3d 579, 586 (5th Cir. 2013) (quoting FED. R. CIV. P. 65(d)).

[16] The Court slightly alters the listed parties to better match Rule 65. *See* FED. R. CIV. P. 65(d)(2)(B)–(C).

[17] 15 U.S.C. § 1117(a).

[18] *Savage Tavern, Inc. v. Signature Stag, LLC*, No. 5:21-CV-078-H, 2022 WL 1471442, at *6 (N.D. Tex. May 10, 2022) (Hendrix, J.).

*Octane Fitness* construed identical language in Section 285 of the Patent Act.[19]  The Fifth Circuit has "merged *Octane Fitness's* definition of 'exceptional' into its interpretation of § 1117(a)."[20]

"[A]n exceptional case is one where (1) in considering both governing law and the facts of the case, the case stands out from others with respect to the substantive strength of a party's litigating position; or (2) the unsuccessful party has litigated the case in an unreasonable manner."[21]  Courts therefore consider the totality of the circumstances when determining whether to award fees.[22]  A prevailing party is not required to show bad faith, malice, or fraud—an exceptionally weak claim by the opposing party can suffice, as can vexatious or inexplicable litigation conduct.[23]  Ultimately, "[t]he determination as to whether a case is exceptional is left to the sound discretion of the trial court."[24]

Under the first exceptionality prong, nothing about Plaintiff's litigation position shows that this case was "exceptional."  The case pertains to a simple default judgment that was resolved in less than one year.  The Court does not find that the mere issuance of a cease-and-desist letter constitutes sufficient willfulness to make this case exceptional.

---

[19] *See Appliance Liquidation Outlet, LLC v. Axis Supply Corp.*, 105 F.4th 362, 382 (5th Cir. 2024) (citing *Octane Fitness, L.L.C. v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 553 (2014)).

[20] *Baker v. DeShong*, 821 F.3d 620, 625 (5th Cir. 2016) (cleaned up).

[21] *Appliance Liquidation Outlet,* 105 F.4th at 382 (cleaned up).

[22] *Octane Fitness*, 572 U.S. at 554.

[23] *See All. for Good Gov't v. Coal. for Better Gov't*, 919 F.3d 291, 295 (5th Cir. 2019).

[24] *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1390 (5th Cir. 1996).

As to the second prong, the litigation conduct—failing to answer—does not support an "exceptional" finding.  Accordingly, the Court, in its discretion, does not find exceptionality in this action.

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion for default judgment against Defendant.  The Court awards Plaintiff the injunctive relief specified in the final judgment to follow.

**IT IS SO ORDERED** this 19th day of May, 2026.

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE